Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Avenue
7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 28-9478

*Attorneys for Plaintiff YESH MUSIC, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

| | |
|---|---|
| YESH MUSIC, LLC,  and JOHN K. EMANUELE, individually and on behalf of all other similarly situated copyright holders , | Index No.: 16-cv-1566 |
| Plaintiff, | **CLASS ACTION COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT** |
| v. | |
| GOOGLE INC., | |
| Defendant. | |

----------------------------------------------------------------x

Plaintiff YESH MUSIC, LLC by and through its attorneys at GARBARINI FITZGERALD

P.C., brings this Class Action Complaint and Jury Demand against Defendant GOOGLE INC.

based on copyright infringement pursuant to the Copyright Act and Copyright Revisions Act, 17

U.S.C. §§ 101 *et seq*. (the "Copyright Act" or "Act").

## PARTIES

1.      At all times material hereto, Plaintiff Yesh Music, LLC ("YESH") is a limited

liability company organized under the laws of the State of New York, with its principal offices

located at 75-10 197th Street, Flushing, New York.  YESH is engaged in, among other things, the

business of music publishing and otherwise commercially exploiting its copyrighted sound

recordings of the band *The American Dollar*.  The sole members of the Plaintiff are Richard

Cupolo and John Emanuele, who are also the sole composers of the Copyrighted Compositions.

2.      At all times material hereto, Plaintiff John K. Emanuele ("EMANUELE") was,

and is, an individual and resident of Queens.  EMANUELE released two collections of songs

under the name "Zero Bedroom Apartment", which Defendant elected to exploit.  EMANUELE

received neither an NOI, royalty, nor statement of account.

3.      Plaintiff is informed and believes, and on that basis avers, that Defendant Google

Inc. ("GOOGLE") is a corporation duly organized and existing under the laws of the State of

Delaware with its principal place of business at 1420 Fifth Avenue, Suite 1500, Seattle,

Washington 98101.  Upon information and belief, GOOGLE may be served at 500 3rd Street,

Suite 460, San Francisco, California 94107, via Legal Counsel, copyright agent, an officer, a

managing or general agent, or any other agent authorized by appointment or by law to receive.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1338 in that

this controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C.

§ 101 et seq.).  This action is a civil action over which this court has original jurisdiction.

5.      Jurisdiction also exists pursuant to 28 U.S.C. § 1332(d)(2) because the matter in

controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs), is a class

action in which a member of the proposed class, including Plaintiff, is a citizen of a state

different from Defendant, and the number of members of the proposed class exceeds 100.

6.      On information and belief, a substantial part of the facts of infringement

complained of herein occurs or has occurred in this District, and Defendant is subject to personal

jurisdiction in this District.

7.      Personal jurisdiction over Defendant GOOGLE is proper in this Court, among other reasons, on the ground that GOOGLE, through its interactive web-based subscription service, caused the distribution of Plaintiff's Copyrighted Compositions throughout the State of New York, including within this Judicial District.  Other wrongful conduct alleged herein, occurred, in part, in the State of New York and in this Judicial District.

8.      The Court has personal jurisdiction over Defendant GOOGLE pursuant to CPLR § 302 (New York's long-arm statute) due to its continuous and systematic business activities within New York as described below.  GOOGLE maintains an office in this Jurisdiction located at 76 9th Ave, New York, NY 10011.

9.      The Court has personal jurisdiction over Defendant GOOGLE pursuant to CPLR § 302 (New York's long-arm statute) due to its continuous and systematic business activities within New York as described below.

10.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c).

11.      Copies of each certificate issued by the U.S. Copyright Office and assignment is annexed and incorporated hereto as **Exhibits A** and **B.** Alternatively, the registrations for the groupings are attached as **Exhibit C.**

12.      Each of Plaintiffs' Copyrighted Compositions was registered prior to the alleged infringement, and satisfies the registration prerequisite under 17 U.S.C. 412(c).

## FACTS

13.      Google Play Music is a music streaming service and online music locker operated by Defendant GOOGLE.  Users with standard accounts can upload and listen to up to 50,000 songs from their personal libraries at no cost.  An "All Access" subscription, sold in combination with YouTube Red for $9.99 per month, entitles users to on-demand streaming of any song in the

Google Play Music catalogue for their geographical region and the ability to create custom radio stations.  Users can purchase additional tracks for their library through the music store section of Google Play. In addition to offering music streaming for Internet-connected devices, the Google Play Music mobile app allows music to be stored and listened to offline.

14.     The service was announced on May 10, 2011, and after a six-month, invitation-only beta period, it was publicly launched on November 16.  Google Play Music offers more than 38 million tracks for purchase or streaming.  It is currently available in 63 countries for Android and iOS devices, web browsers, and various media players (such as Sonos and Chromecast).

15.     At launch, GOOGL had partnerships with three major labels—Universal Music Group, EMI, and Sony Music Entertainment—along with other smaller labels, although no agreement had been reached with Warner Music Group; in total, 13 million tracks were covered by these deals, 8 million of which were available for purchase on launch date.

16.     Defendant GOOGLE is not a newcomer to streaming music, and is well-aware of its obligations under § 115 of the Act.  GOOGLE negotiated and adopted the settlement with the Copyright Royalty Board concerning the revisions to § 115.  See **Exhibit E**.  As part of that settlement with the Copyright Royalty Board, Defendant received significant concessions concerning notification, namely, in the event Defendant could not locate an author of any work, Defendant could serve the Copyright Office for any NOI.

17.     Plaintiffs and the Putative Class own the mechanical rights to musical compositions in the United States.  Each of Plaintiffs' and the Putative Class' Copyrighted Compositions was registered within three months of publication, or one month after publication on Defendant's use, and satisfies the registration prerequisite under 17 U.S.C. 412(c).

18.     Pursuant to the Copyright Act, Plaintiff and the Putative Class possess exclusive rights regarding the reproduction and/or distribution of the Copyrighted Compositions, including the associated licensing rights to such activities.

19.     Plaintiffs and the Putative Class distribute, sell and/or license their Copyrighted Compositions in the form of CDs, and other tangible media throughout the United States, including in New York.  Plaintiffs and the Putative Class reproduce, distribute, sell, and/or license the copyrighted Compositions in the form of digital audio files delivered and performed via the Internet.

20.     Plaintiffs and the Putative Class have invested and continue to invest substantial money, energy, time, effort and creative talent to create and develop the Copyrighted Compositions.

21.     Defendant's interactive commercial music streaming service can be found at < https://play.google.com/music/listen?authuser#/now>, permits users to customize listening choices for recorded music as well as watch videos.  Its Internet services are downloadable to computers and handheld devices (via mobile applications) making its streaming capabilities widely available to millions of users.

22.     With the GOOGLE Play Music system, the user can stream and/or download music as well as create playlists and artist based stations for the user's tablet, PC, TV and phone.

23.     Indeed, Defendant has optimized their website for use on iOS and Android-based devices thereby reaching vast markets of users.

24.     Defendant's GOOGLE Play Music is intended to and does promote its services in a manner designed to attract paid subscribers of its services.

25.     Defendant regularly reproduced and/or distributed to listeners and users of its Service, Plaintiffs' and Putative Class Members' musical compositions, and has done so repeatedly for at least the past three years.  Defendant created its now 38 million track library by dumping all of the music from independent artists into the GOOGLE Music Service without serving NOIs.  Independent artists are predominantly impacted by Defendant's systematic infringement.

26.     Defendant has not licensed the mechanical rights to the musical compositions of Plaintiffs' and the Putative Class Members' or otherwise received authorization from them to reproduce or distribute such Compositions to its users and subscribers.

27.     Defendant's unlawful reproduction and/or distribution of Plaintiffs' and Putative Class Members' copyrighted Compositions have substantially harmed, and continues to harm, Plaintiffs and the Putative Class.

28.     A non-exhaustive and illustrative list of Plaintiffs' Copyrighted Compositions which Defendant has illegally reproduced and/or distributed for its users, includes, but is not limited to those identified in **Exhibit's A, B, C and D**.  Plaintiffs have received Certificates of Copyright Registration from the Register of Copyrights for each of their Copyrighted Compositions.

29.     The Copyright Act provides statutory penalties to discourage Defendant's infringement, including statutory damages awards of between $750 and $30,000 for each infringed Composition, and up to $150,000 for a willful infringement.

## COPYRIGHT INFRINGEMENT FACTS APPLICABLE TO ALL PLAINTIFF AND THE PUTATIVE CLASS

30.     As a general proposition, a copyright confers on the owner the exclusive right to reproduce the copyrighted Composition.

31.     Absent a license from the copyright owner, which the owner is free to grant or deny, reproduction of the Composition by another constitutes copyright infringement.

32.     When Congress enacted the Copyright Act of 1909, it was concerned that exclusivity with respect to musical compositions would give rise to "a great music monopoly." It therefore modified the principle of exclusivity in the case of nondramatic musical Compositions by enacting a compulsory license provision which, in defined circumstances, imposed upon the copyright owner a license permitting the mechanical recording of the copyrighted song "on such media as a phonograph record or a piano roll."

33.     Although recording technology has changed since 1909, licenses to record musical compositions on such media continue to be called "mechanical licenses."

34.     The compulsory mechanical license concept was carried forward in Section 115 of the Copyright Act of 1976 which, generally speaking, permits one wishing to record a copyrighted nondramatic musical Composition to do so in the absence of the copyright owner's consent in exchange for payment of a statutory royalty.  But the availability of compulsory mechanical licenses is dependent on the strict limitations of Section 115(b)(1) of the Act which requires in pertinent part that "[a]ny person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the Composition, serve notice of intention to do so on the copyright owner."

35.     Under section 115, those who seek to make and distribute reproductions of a musical Composition may obtain a license to do so by serving a NOI on the copyright owner, no

later than thirty days after making, and before distributing, any phonorecords. 17 U.S.C. §

115(b)(1).  Once an entity has served the NOI, that entity must provide statements of account and

pay the statutorily prescribed royalties on a monthly basis. 17 U.S.C. § 115(c)(5).

36.     If the name and address of the owner of the Composition cannot be identified

from the public records of the Copyright Office, the user may file the NOI with the Office. 17

U.S.C. § 115(b)(1).  In that case, the user must pay a filing fee to the Office but does not need to

deposit royalties. See 17 U.S.C. § 115(c)(1); 37 C.F.R. § 201.18(f)(3).

37.     Under Section 115, the consequences of any lapse are severe: "failure to serve or

file the notice required by clause (1) forecloses the possibility of a compulsory license and, in the

absence of a negotiated license, renders the making and distribution of phonorecords actionable

as acts of infringement ..."

38.     Defendant failed to serve NOIs, or serve timely NOIs, on Plaintiffs' and the

Putative Class' for their Copyrighted Compositions.

39.     Defendant's failure to serve NOIs before the start of distribution precludes the

creation of a compulsory license, and it does so both as to copies distributed prior to service and

as to copies distributed thereafter.

40.     The tremendous power granted to Defendant under Section 115 is balanced by the

strict obligations regarding notice.  Defendant intentionally failed to adhere to its Section 115

obligations, while enjoying all of the benefits afforded by Section 115.

## CLASS ALLEGATIONS

41.     Plaintiffs brings this action on behalf of themselves and on behalf of all other

similarly situated owners of mechanical rights for registered musical compositions, whose rights

were improperly infringed by Defendant's unlicensed and/or unauthorized reproduction and/or

distribution of the Copyrighted Compositions failure to properly calculate royalties, and failure to provide monthly statements detailing every track.

42.     Defendant failed to serve an NOI, or a timely NOI, for all of Plaintiffs' and Putative Class' Copyrighted compositions.

43.     The infringement of Plaintiffs' and the Putative Class Members' mechanical rights was, and is, knowing and willful.

44.     This action is necessary to protect the property rights of Plaintiffs and all others similarly situated holders of the publishing rights who have been damaged due to Defendant's calculated and unlawful infringement, and reduction in the per-stream rate to all publishing rights holders who received royalties from Defendant's interactive streaming product.

45.     The CLASS is comprised of and defined as follows:

> "All owners of mechanical distribution and reproduction rights in musical compositions registered under United States federal law, which compositions were reproduced or distributed by GOOGLE through GOOGLE Play Music, without license or authorization since March 1, 2013 and were registered within 90 days of first publication or 30 days of being uploaded, distributed and reproduced on the GOOGLE Music Service."

46.     This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are clearly and easily ascertainable and identifiable.

47.     The class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.  Plaintiffs are informed and believe that there are thousands of class members and that those class members can be readily ascertained from Defendant's database files and records, and via discovery in this action.

48.     Plaintiffs and the Putative Class hold the rights to many copyrighted musical compositions which Defendant has reproduced and/or distributed without license and without proper payment of royalties or accounting for royalties.

49.     Plaintiffs and the Putative Class have sustained actual pecuniary loss and face irreparable harm arising out of Defendant's systematic and unlawful diminution of the royalty payments with accounting for those payments as described herein.

50.     Upon information and belief, Defendant has maintained records of the musical compositions it reproduces or distributes.

51.     The Putative Class Members can be readily located and notified of this action.

52.     The claims of Plaintiffs are typical of the claims of the members of the Putative Class, and their interests are consistent with and not antagonistic to those of the other Putative Class members they seek to represent.

53.     Plaintiffs and the Putative Class hold the "mechanical rights" to numerous copyrighted musical compositions which Defendant has reproduced and/or distributed without license and without providing an NOI to Plaintiffs or the Putative Class as required by § 115 of the Act.

54.     Plaintiffs, and all members of the Putative Class, have sustained actual pecuniary loss and face irreparable harm arising out of Defendant's continued infringement as complained of herein.

55.     Plaintiffs have no interests that are adverse to, or which conflict with, the interests of the absent members of the Putative Class and is able to fairly and adequately represent and protect the interests of such a class.

56.     Plaintiffs have raised a viable copyright infringement claim of the type reasonably expected to be raised by members of the Putative Class, and will vigorously pursue those claims.

57.     If necessary, Plaintiffs may seek leave of the Court to amend this Complaint to include additional class representatives to represent the Putative Class or additional claims as may be appropriate.

58.     Plaintiffs are represented by experienced, qualified and competent counsel who is committed to prosecuting this action.

59.     Common questions of fact and law exist as to all members of the class that predominate over any questions affecting only individual members of the class.

60.     These common legal and factual questions, which do not vary from class member to class  member, and which may be determined without reference to the individual circumstances of any class member include, without limitation, the following:

   a)      whether Defendant reproduced or distributed or otherwise exploited, via its GOOGLE Play Music system, the registered musical compositions without first serving an NOI, or obtaining a license or other required authorization;
   b)      whether Defendant's reproduction, distribution or other exploitation of registered musical compositions without first obtaining a license or other required authorization constitutes a violation of the Copyright Act, 17 U.S.C. §§ 106 and 501;
   c)      whether Defendant's unauthorized reproduction, distribution or other exploitation of registered musical compositions was done willfully, thereby entitling the members of the class to increased statutory damages;
   d)      whether Defendant violated of New York's General Business Law § 349 for unfair and unlawful business practices;
   e)      whether Defendant's violation of New York's General Business Law §  349 is continuing, thereby entitling Class Members to injunctive or other relief;
   f)      the basis and method for determining and computing damages; and,
   g)      whether Defendant's conduct is continuing, thereby entitling Plaintiffs and Members of the class to injunctive or other relief.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is impracticable.

62.     The claims of the individual members of the class may range from smaller sums to larger sums, depending upon the number of infringements.  Thus, for those Putative Class members with smaller claims, the expense and burden of individual litigation may not justify pursuing the claims individually.  Even if every member of the class could afford to pursue individual litigation, which is highly unlikely in the independent artist community, the court system could not.

63.     It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, contradictory, or inconsistent judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

64.     On the other hand, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the class.

65.     Plaintiffs anticipate no difficulty in the management of this action as a class action.

## FACTS APPLICABLE TO YESH

66.     YESH consists of two men who have been professional musicians since they were 16 years old.  In fact, at 16 years old, John Emanuele and Rich Cupolo played at CBGB and recorded and released two EPs.  While attending Townsend Harris High School in Queens, Emanuele and Cupolo won the Bertlesmann Songwriting contest.  Since they were 25 years old,

Emanuel and Cupolo, now thirty, have exclusively earned their living from exploiting their Copyrighted Compositions.

67.     Digital downloads represent 50% of the money generated from the Copyrighted Compositions.  The other 50% comes from licensing for varied uses including motion pictures, commercials, and video games.  Examples of some of the licensed uses are as follows:

| Motion Pictures | Production Company |
| --- | --- |
| Extremely Loud & Incredibly Close | Warner Brothers |
| Up In The Air | Paramount Pictures |
| Coast Modern | Two Fold Film |
| Damnation | Felt Soul Media |
| Eastern Rises | Felt Soul Media |
| Officer Down | Felt Soul Media |
| Yami no Ichi Nichi | Mario Junncompos |
| Nuclear Family | Ian Hawkins |

| Television Program | Production Company |
| --- | --- |
| CSI: Miami | CBS/Paramount |
| Spring Watch | Fox Television |
| Nike Battlegrounds | MTV/Viacom |
| Real World/Road Rules | Bunim Murray/MTV |
| Red Band Society | Fox Television |
| Hawthorne | TNT Network |

| | |
|---|---|
| Human Planet | Discovery Network |
| Outside Today | Outside TV |
| Mrs. Eastwood & Co | Bunim Murray/MTV |
| Teen Mom | MTV/Viacom |
| Sixteen and Pregnant | MTV/Viacom |
| Keeping Up With The Kardashians | Bunim Murray/E Television |
| Alaska: The Last Frontier | Discovery Network |
| The Vineyard | ABC Family |
| Gott und die Welt | German TV ARD |
| America's Psychic Challenge | Bunim Murray Productions |
| Caged | MTV/Viacom |
| True Life | MTV/Viacom |
| This Is How I Made It | MTV/Viacom |
| TO Show | VH1/Viacom |
| Styl'd | MTV/Viacom |
| Life of Ryan | MTV/Viacom |
| If You Really Knew Me | MTV/Viacom |
| Taboo Nation | National Geographic |
| Shahs of Sunset | Ryan Seacrest Productions |
| How I Rock It | Ryan Seacrest Productions |
| Popland | MTV/Viacom |

| Commercials | Company |
|---|---|
| Infiniti Automobile | Infiniti Automobiles |
| Samsung Smart TV | Samsung |
| GoPro Camera | GoPro Cameras |
| Elle Magazine UK \| Dubai Teaser | Elle Magazine UK |
| Pre-Auction Statement | Leonardo DiCaprio Foundation |

| Subaru Online Advertisement | Subaru (Switzerland) |
|---|---|
| Burton Snowboard | Burton Snowboards |
| O'Neill Europe Advertisements | O'Neill Europe |
| Dove | Dove |
| DC Shoes | DC Shoes |
| Converse Web | Converse |
| NBA Playoffs Commercial | ESPN |
| CanonOptics Advertisement | CanonOptics/Burton |
| Telluride Tourism Board | Telluride Tourism Board |
| Unit Clothing | Unit Clothing Enter. |
| Viasat Baltics | Viasat Baltics |
| Morgan Stanley | Morgan Stanley/Chief Ent. |

| Video Game | Company |
|---|---|
| The Amazing Spiderman | Activision |

68.     Plaintiff Yesh is the sole beneficiary of all right, title and interest in, and to, the copyrighted compositions identified in **Exhibits A, C and D.**

69.     As **Exhibit A, B,** and **C** to this Complaint demonstrates, Plaintiff YESH has complied with all laws pertinent to the Copyrighted Compositions as a copyrighted Composition and, in particular, has applied for and received the Certificates of Copyright Registration from the Register of Copyrights for the Copyrighted Compositions.

70.     Defendant began distributing one hundred twenty three (123) musical compositions of Plaintiff YESH identified in **Exhibit D**, which were covered by 116 copyright registrations as shown in **Exhibit A,** and alternatively, **Exhibit C.**  Defendant failed to serve an NOI for any recording.

71.     Plaintiff YESH made numerous submissions of groups of tracks, for review by Defendant through TuneCore.

15

72.     Pursuant to Plaintiff YESH's agreement with TuneCore, Plaintiff checks a box that says "Deliver Here" which guarantees nothing but an audition with the selected digital store. Defendant was just one of the "selected stores" chosen by Plaintiff to be sent the master audition recordings of the Copyrighted Compositions.

73.     The license for the physical sound recordings here -- Master Recording License -- was granted to Defendant through TuneCore.  TuneCore functions like a music label, allowing artists to submit the master recordings through TuneCore to various "Digital Stores" for review.

74.     At no time did TuneCore hold itself out as conveying a mechanical license for the compositions submitted on behalf of Plaintiff YESH.  Further, it is axiomatic that a mechanical license to record and distribute the songs must be obtained in order to lawfully make the recordings available for temporary stream or permanent download.

75.     Defendant did not serve an NOI for any of the forgoing recordings, instead it dumped the recordings into its library, with complete disregard for the rights of Plaintiff YESH.

76.     After receipt of the master audition recordings, Defendant may elect to exploit the masters, or reject one or all of the sound recordings due to "technical or editorial specifications."

77.     Defendant had the option to upload some or all of the Copyrighted Compositions onto the GOOGLE Music Service.  For every copyrighted recording Defendant elected to upload onto its service, it was required to serve a Notice of Intent for a Compulsory License ("NOI") within 30 days of upload.

78.     Defendant did elect to exploit the sound recordings of the Copyrighted Compositions, but elected to do so with no license or authority. See **Exhibit F**.  Defendant GOOGLE failed to obtain mechanical licenses for the two hundred and seventy (270) tracks on

the GOOGLE Music system under 17 U.S.C. § 115 for the distribution of the Copyrighted Compositions.

79.     The failure to serve timely NOIs renders the distribution of the Copyrighted Compositions unlicensed and thereby violates my Plaintiffs' exclusive rights pursuant to 17 U.S.C. §§ 106 and 114.

80.     As a result, Defendant lost its right to serve compulsory licenses for Plaintiff YESH's Copyrighted Compositions.  Further, Defendant's failure to comply with Section 115 was done as a matter of cost-cutting business practice, and only an award at the higher end of the statutory framework will serve to curtail Defendant's predatory behavior as detailed below.

81.     Defendant GOOGLE knew who the Plaintiff was, after all it listed "Yesh Music" is listed as the record label for the band *The American Dollar* on its website. (Yesh Music was a partnership formed in 2006 which was the predecessor to Plaintiff Yesh Music, LLC.).  Each submission from TuneCore identified the composers and record label.  Defendant uploaded not just Plaintiff's music to its service, but the album cover art and listed the name of the record label – "Yesh Music" and artists.

82.     In less than a few minutes, Defendant could have complied with Section 115's notice requirements – the NOIs – but it elected not to as part of a cost-cutting business decision.

83.     Defendant was contacted by correspondence from counsel dated July 22, 2015, but elected to ignore Plaintiffs' counsel and continue to stream the Copyrighted Compositions. See **Exhibit G**.

84.     Defendant intentionally infringed YESH's one hundred and sixteen (116) registrations, by, among other things, making the Copyrighted Compositions available for

unlawful and unauthorized digital download and distribution to the public through its interactive Internet subscription music service.

### THE YESH NOIs

85.     Defendant served two NOI covering four tracks.

86.     The NOIs evidence the fact that Defendant could serve NOIs if it wished to comply with the law.

87.     Both of the NOIs (attached as **Exhibit H**) failed to account for the vast majority of tracks released in various groupings to Defendant for review.

88.     Not a single NOI was served remotely close to 30 days of the corresponding recording being published by Defendant.

89.     Both of the NOIs was a license for one year and expired without renewal.

90.     As a result, Defendant lost its right to serve compulsory licenses for Plaintiff YESH's Copyrighted Compositions.

91.     Both of the NOI was invalid because it was pre-dated, and not served within thirty (30) days of the two recordings being made available.

92.     As of the date of this Complaint, there is not a single valid NOI covering any of Plaintiff YESH's Copyrighted Compositions on GOOGLE Service.

93.     On or about July 22, 2015, Defendant were contacted by correspondence from Plaintiffs' counsel, and notified that YESH had not received valid NOIs for any of the musical compositions being streamed on the GOOGLE Music Service; Defendant did not respond.

94.     In the seven months after Defendant was put on notice by counsel, Defendant has continued to stream YESH's one hundred and sixteen (116) Copyrighted Compositions.  This is the definition of "intentional" under 17 U.S.C. § 504(c)(2).  Defendant acted willfully, and

wantonly, or at least with reckless disregard to YESH's rights.  Defendant is liable for infringement of YESH's exclusive rights to the Copyrighted Compositions as provided by clauses (1) and (3) of section 106 of the Copyright Act.

95.    Upon information and belief, Defendant made a business decision that it was more cost effective to infringe the copyrights of independent musicians than spend the time and money contacting every rights owner.

### YESH DOES NOT RELEASE COHERENT "ALBUMS"

96.    When a copyright holder or publisher issues material both on an individual basis and as part of a compilation, the Copyright Act permits a statutory damages award for each individual Composition offered separately.

97.    Only at the very beginning of their career was Plaintiff YESH focused solely on creating traditional albums (cohesive Compositions).

98.    Plaintiff's business model changed early on to focus on licensing individual songs.  The band does not tour.  Instead, it generates revenue from licensing and on-line streaming.

99.    Of the sixteen releases of material by YESH, only seven contained all new tracks. The rest are a mixture of previously released songs, new songs, and old songs remixed to create new licensing opportunities.

100.    For example, the "album" titled "Ambient 3", consists of four original recordings and thirteen remixes of previous recordings.   The one, and only, time this group of seventeen recordings was released together was on September 15, 2012, when it was released to the 31 "digital stores" for consideration.

101.    TuneCore, the entity that submits the recordings, requires all groupings of recordings to be uploaded onto its service as an album.   Plaintiff copyrighted the new and remixed recordings as a group just to protect themselves before releasing them to the public. The individual recordings were copyrighted three months later.

102.    For a second example, on December 20, 2012, Plaintiff released two "albums" along with ten unrelated recordings to 31 digital stores for consideration.  All of these recordings were previously released in other groupings or were re-worked singles.

103.    For third example, on December 10th, 2013, Plaintiff released fifty recordings to twenty six digital stores, fifteen of those recordings were also included in the September 15, 2012 grouping.  The rest of the tracks were from earlier recordings or were re-worked singles.

104.    For a fourth example, on December 12th, 2013, Plaintiff released ten recordings to 31 digital stores.  Four of those recordings were included in the September 15, 2012 grouping, the rest were re-released singles.

105.    The shuffling of previous recordings is part of a necessary for Plaintiff's business model, and is designed to increase licensing revenue.  The mere fact that the recordings are shuffled is strong evidence they were not meant to be a logical or cohesive unit.

106.    Plaintiff's three "ambient" releases were marketing releases consisting mainly of remixes from previous albums, varied in nature, designed to increase licensing opportunities for the individual compositions.

107.    Plaintiff YESH does not have "albums" in the traditional sense, but releases collections of individual songs which are not an integrated composition.  For that reason, numerous musical compositions appear in three or four of the collections submitted.

108.    For example, of the 13 collections of songs released by Plaintiff YESH, only 5 have been totally original music.  The rest are mixtures of previously released songs, and re-worked songs.  This is done in order to showcase various recordings for possible licensing deals.

109.    None of the collections is meant to be a cohesive unit; instead, they are constantly shuffled like a deck of cards and re-released.

110.    In fact, Plaintiff YESH affirmatively avoids any of the musical compositions being associated with any other, because this diminishes the licensing opportunities which is 50% of Plaintiff YESHs income.  There is a great need by Plaintiff YESH to create new opportunities for various licensing entities to become aware of the individual tracks.

111.    Tellingly, songs re-released on the numerous compilation albums are often streamed by users far more times than the original release.

112.    Accordingly, no grouping can possibly be considered a coherent unit.

### FACTS APPLICABLE TO PLAINTIFF JOHN K. EMANUELE

113.    Plaintiff EMANUELE released four collections of music to the GOOGLE Music Service.  The first collection, titled *Filmmuzic*, had 19 tracks and was made available by Defendant on or about November 2014.  *Filmmuzic* was released in February 2011 and the Copyright Registration date is May 27, 2011.  The second collection, titled *Complete Discography 2009-2013*, was made available by Defendant on or about April 9, 2013, and contained 90 songs. See **Exhibit I**.  The Registration date is February 20, 2013. See **Exhibit B**.

114.    Plaintiff EMANUELLE distributed its music for review purposes only through a company call Tune Core.

115.    Pursuant to Plaintiff EMANUELLE's agreement with TuneCore, Plaintiff checks a box that says "Deliver Here" which guarantees nothing but an audition with the selected digital

store.  In or about November 2012, Defendant was one of the "selected stores" chosen by

Plaintiff to be sent the master audition recordings of the Copyrighted Compositions.

116.     At no time did TuneCore hold itself out as conveying a mechanical license for the

compositions submitted on behalf of Plaintiff.  Further, it is axiomatic that a mechanical license

to record and distribute the songs must be obtained in order to lawfully make the recordings

available for temporary stream or permanent download.

117.     Defendant had the option to upload some or all of the copyrighted Compositions

onto the GOOGLE Play Music system.  For every copyrighted recording Defendant elected to

upload onto its service, it was required to serve a Notice of Intent for a Compulsory License

("NOI") within 30 days of upload; it did not.

118.     Defendant did elect to exploit the sound recordings of the Copyrighted

Compositions, but elected to do so with no license or authority.  Defendant failed to obtain

mechanical licenses under 17 U.S.C.§ 115 for the distribution of the musical Compositions.

119.     Defendant failed to serve an NOI on Plaintiff EMANUELE for any recording at

any time.

120.     Defendant failed to pay any royalties to Plaintiff EMANUELE.

121.     Defendant cannot be heard to argue that it has infringed both Registered

Copyrights of Plaintiff EMANUELE.

122.     Plaintiff EMANUELE is the sole beneficiary of all right, title and interest in, and

to, the copyrighted compositions identified in **Exhibit B.**

123.     Defendant did not serve an NOI for any of the forgoing recordings.  Instead it

dumped the recordings into its service, with complete disregard for the rights of Plaintiff.

124.    As of the date of this Complaint, Defendant has failed to serve a single NOI covering any of EMANUELE'S Copyrighted Compositions on GOOGLE Music.

125.    The failure to serve timely NOIs renders the distribution of the Copyrighted Compositions unlicensed and thereby violates my Plaintiffs' exclusive rights pursuant to 17 U.S.C. §§ 106 and 114.

126.    As a result, Defendant lost their right to serve compulsory licenses for Plaintiff EMANUELE's Copyrighted Compositions.  Further, Defendant's failure to comply with Section 115 was done as a matter of cost-cutting business practice, and only an award at the higher end of the statutory framework will serve to curtail Defendant's predatory behavior as detailed below.

127.    Defendant knew who Plaintiff EMANUELE was; after all it listed "John Emanuele" on its website.  Each submission from TuneCore identified the composers and record label.  Defendant uploaded not just Plaintiff's music to its service, but the album cover art and listed the name of the record label.

128.    In less than a few minutes, Defendant could have complied with Section 115's notice requirements – the NOIs – but they elected not to as part of a cost-cutting business decision.

129.    Defendant was contacted by correspondence from counsel dated July 22, 2015, but elected to ignore Plaintiff EMANUELE's counsel and continued to stream the Copyrighted Compositions.

130.    In the seven months after Defendant was put on notice by counsel, Defendant continued to stream EMANUELE's tracks covered by two (2) Copyright Registrations.  This is

the definition of "intentional" under 17 U.S.C. § 504(c)(2).  Defendant, acted willfully and

wantonly, or at least with reckless disregard to YESH's rights.

131.    Defendant intentionally infringed EMANUELE's two (2) Copyright

Registrations, by, among other things, making the underlying Copyrighted Compositions

available for unlawful and unauthorized digital download and distribution to the public through

its interactive Internet subscription music service.

132.    Defendant is liable for infringement of EMANUELLE's exclusive rights to the

Copyrighted Compositions as provided by clauses (1) and (3) of section 106 of the Copyright

Act.

133.    Every time Defendant failed to pay Plaintiff EMANUELE royalties, they

knowingly infringed his exclusive right to the recordings underlying his copyright registrations.

134.    Upon information and belief, Defendant made a business decision that it was

more cost effective to infringe the copyrights of independent musicians than spend the time and

money contacting every rights owner.

### FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT

135.    Plaintiffs and the Putative Class incorporate the allegations contained in the

preceding paragraphs as if set forth at length here.

136.    Defendant has, without a "mechanical" license under Section 115 from Plaintiffs

or the Putative Class, reproduced and publicly performed and/or publicly distributed Plaintiffs'

Copyrighted Compositions through its interactive web-based subscription streaming service.

137.    It cannot be disputed that the Plaintiffs and the Putative Class have valid,

registered copyrights, and that Defendant has reproduced and offered the Copyrighted

Compositions for streaming, including permanent and temporary digital download, without a

license, thus infringing Plaintiffs' and the Putative Class' rights under Section 115 of the

Copyright Act.  Irreparable injury is presumed here as Plaintiffs and the Putative Class have

established a prima facie case of copyright infringement.

138.   Even after Defendant was put on notice, over four months ago, that it had no

license or authority, Defendant elected to continue to reproduce and publicly perform and/or

publicly distribute Plaintiffs' Copyrighted Compositions through its subscription service.

139.   The making or the distribution, or both, of all Copyrighted Compositions without

the payment of royalties is actionable as acts of infringement under section 501 and fully subject

to the remedies provided by sections 502 through 506 and 509.

140.   Each time the Plaintiffs and Putative Class were deprived of their statutory royalty

entitlement, e.g., by non-payment of royalties, a distinct harm was done to Plaintiffs' and the

Putative Class' property interest.

141.   Defendant's continued streaming of Plaintiff's Copyrighted Compositions, after it

was served with notice on July 22, 2015, is clearly an intentional infringement under the Act.

142.   Defendant's predatory conduct was clearly intentional within the meaning of

504(c)(2) for purposes of enhancing statutory damages.  Defendant knew its actions constituted

an infringement each time it failed to serve an NOI or make a royalty payment.

143.   Defendant's knowledge may also be inferred from its conduct including the

reckless disregard of the Plaintiffs' and Putative Class' rights (rather than actual knowledge of

infringement), which suffices to warrant award of the enhanced damages.

144.   Plaintiffs and the Putative Class may also elect to recover statutory damages

pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but not less than

$30,000, for each infringement of each copyright registration identified in **Exhibit A** and those that will be produced for the Putative Class, as available under the law.

145.    Each time the Plaintiffs were deprived of their statutory royalty entitlement, e.g., by non-payment of royalties, a distinct harm was done to Plaintiffs' property interest. Defendant's continued streaming of Plaintiff's Copyrighted Compositions, after it was served with notice on July 22, 2015, is clearly an intentional infringement under the Act. Defendant's predatory conduct was clearly intentional within the meaning of 504(c)(2) for purposes of enhancing statutory damages.  Defendant knew its actions constituted an infringement each time it failed to serve an NOI or make a royalty payment.

146.    Defendant's knowledge may also be inferred from its conduct including the reckless disregard of the Plaintiffs' right (rather than actual knowledge of infringement), which suffices to warrant award of the enhanced damages.

147.    Plaintiffs and the Putative Class may also elect to recover statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but not less than $30,000, for each infringement of each copyright registration identified in **Exhibit B**, as available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, and all other persons similarly situated, respectfully prays this Court enter an order against Defendant as follows:

1) Certifying this matter as a class action;

2) Appointing Plaintiffs as class representative and Plaintiffs' counsel as class counsel;

3)    Entering injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Class (17 U.S.C. § 502), including enjoining   Defendant from continued copyright infringement and violations of the relevant provisions of the Copyright Act;

4)    Defendant, and its respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliates, companies, successors,

5)    Awarding statutory damages to Plaintiffs and the Putative Class according to proof, including but not limited to all penalties authorized by the Copyright Act (17   U.S.C. §§ 504(c)(1), 504(c)(2));

6)    Awarding reasonable attorneys' fees and costs (17 U.S.C. § 505);

7)    Awarding Plaintiffs and the putative Class pre- and post-judgment interest to the extent allowable; and,

8)    Award such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.


Dated: March 1, 2016                                    GARBARINI  FITZGERALD P.C.


                                                        By: _____
                                                        Richard M. Garbarini (RG 5496)
                                                        250 Park Avenue
                                                        7th Floor
                                                        New York, New York 10177
                                                        Telephone: (212) 300-5358
                                                        Facsimile: (347) 218-9479
                                                        *Attorneys for Plaintiff*

27